IN THE UNITED STATES DISTRICT COURT
OF THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ANTHONY J. PALUMBO and PHYLLIS PALUMBO, his wife,**<br><br>Plaintiffs,<br><br>v.<br><br>**PROVIDENT TRUST GROUP LLC,**<br>Defendant. | **CASE NO.:** 6:19-CV-252[LEK/ATB]<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiffs, Anthony J. Palumbo and Phyllis Palumbo ("Plaintiffs"), by and through their undersigned counsel, as and for a Complaint against Defendant, Provident Trust Group LLC ("Provident"), allege as follows based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and upon information and belief, as to all other allegations.

### NATURE OF THE ACTION

1. This is an action for fraud, misrepresentation, breach of fiduciary duties, gross negligence, and violation of federal laws, rules, and regulations.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1332(A)(1), because it is a dispute between citizens of different states, and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

3. In addition, this action arises based upon federal laws and regulations pursuant to the Employment Retirement Income Security Act ("ERISA") codified at 29 U.S.C. §1001, *et seq.*

4. Venue is proper, because Plaintiffs are residents within this vicinage, and

{00595399-1}

Defendant Provident conducts business within this vicinage. In addition, a substantial part of the events complained of giving rise to these claims occurred within this vicinage.

## THE PARTIES

5. Plaintiffs, Anthony J. Palumbo and Phyllis Palumbo, husband and wife, are residents of the State of New York, residing at 1707 Sherman Drive, Utica, New York 13501.

6. Defendant Provident, upon information and belief, is a corporation organized and existing under the laws of the State of Nevada, with a principal place of business located at 8880 West Sunset Road, Suite 250, Las Vegas, Nevada 89148.

7. Defendant Provident holds itself out and conducts business as a licensed security dealer, primarily dealing with investments made pursuant to ERISA on behalf of individuals.

## FACTUAL BACKGROUND

8. Plaintiff Anthony J. Palumbo is a retired ophthalmologist who is 81 years of age and Plaintiff Phyllis Palumbo, his wife, is 79 years of age.

9. As part of Plaintiffs' retirement plan, they each had individual retirement account investments ("IRAs"), which, for a long time, they had maintained with Cadaret, Grant, a licensed regulated national broker dealer, which managed the Plaintiffs' IRAs.

10. Plaintiffs are unsophisticated in matters of finance and financial investments and, therefore, relied upon the licensed broker to provide proper investments.

11. Plaintiffs were interested in having secure, safe investments, which provided them a return on their principal that they could use to support themselves during their retirement years.

12. In 2015, Plaintiffs were introduced to George Inserra, who represented that he had an expertise in investments, and particularly IRAs, and who suggested that they could assist Plaintiffs in investing in a safe and secure investment for their IRAs, which would produce a

{00595399-1}

2

greater return than they were presently receiving.

13. Unbeknownst to Plaintiffs, the aforementioned George Inserra had been found guilty of criminal violations involving stock fraud, and did not hold, nor was he capable of maintaining, any type of license to deal in securities.

14. Plaintiffs were intrigued by the prospect of having a safe investment for their IRAs that would produce a higher return.

15. George Inserra introduced Plaintiffs to Robert Guess and Richard Tilford, who were the owners and operators of a company known as Texas First Financial, which allegedly was a licensed security dealer. They represented that they had an investment through an entity known as Premier Immediate Care LLC and Premier One Emergency Centers LLC aka Family ER (Premier Group), and explained to Plaintiffs that through Premier Group, Plaintiffs could invest their IRAs and receive Promissory Notes which had an interest rate of nine percent (9%) per annum and which was in excess of what Plaintiffs were traditionally earning on their IRA investments.

16. Plaintiffs became more intrigued, and it was represented to them that these were "guaranteed notes" which were very safe investments.

17. The Plaintiff Anthony Palumbo after having been flown out to Texas and introduced to the ultimate recipient of the proceeds John Goodman( CEO was unable to appear) and Scott Pickard (CFO) for the alleged investment with Premier Immediate Care LLC and Premier One Emergency Centers LLC aka Family ER (Premier Group) and was shown properties that were alleged to be the recipients of the $1,000,000.00 investment proceeds as an emergency/urgent care operation. Robert Guess and Richard Tilford along with Scott Pickard of Premier One Emergency Centers

LLC a/k/a Family ER aka Premier Immediate Care participated in the inspection and review of the urgent care centers.

18. Upon information and belief the aforementioned actions were taken in conjunction with Defendant Provident who ultimately drafted the account paperwork and forwarded same to Plaintiffs and directed the execution of the documents necessary to set up the recipient of the one million dollars as a transfer to a traditional IRA.

19. Plaintiffs decided that they would make the investment and transfer One Million Dollars ($1,000,000) from their IRA accounts which was with Cadaret, Grant, to purchase Promissory Notes from Premier Group.

20. Guess and Tilford advised Plaintiffs that they would have to transfer their funds from Cadaret, Grant to a company which handled what was known as "self-directed IRAs" ("SDIRAs").

21. Being unsophisticated and not understanding the distinction between a traditional IRA and a self-directed IRA, Plaintiffs, at the recommendation of the aforesaid individuals, were put into contact with representatives of Defendant Provident.

22. Plaintiffs spoke with representatives of Defendant Provident who explained and directed the Plaintiffs how to establish an account.

23. Plaintiffs received a packet of documents prepared by Defendant Provident. The account documents were never reviewed by any representatives of Defendant Provident with Plaintiffs, were never explained to the Plaintiffs, and Plaintiffs, as indicated, lacked the sophistication to understand the documents.

24. Plaintiffs signed the documents, because they were advised by various representatives, including representatives from Defendant Provident, that they were "form

documents" and transferred One Million Dollars ($1,000,000) from Cadaret, Grant to Defendant Provident, in what they thought was a safe investment similar to the investments that they previously had for their IRA accounts.

25. Plaintiff's understood that Defendant Provident would receive fees for its services, which in fact were received by Defendant Provident.

26. Defendant Provident paperwork set forth a description of the IRA, which would lead one to believe was a traditional IRA, and provided details on how it remains safe and how it is treated the same as the IRA from where the funds were being withdrawn. On its face, the documents appear to be a transfer from a traditional IRA to another traditional IRA.

27. Defendant Provident working closing with John Goodman and Scott Pickard and in conjunction with Robert Guess and Richard Tilford of Texas First Financial orchestrated the transfer of IRA pension proceeds from Caderet Grant of One Million Dollars ($1,000,000.00) to Defendant Provident. Provident not only set up the IRA plan but consented to the payment of custodial fees from unregistered unlicensed persons such as Robert Guess and Richard Tilford and/or Texas First Financial. The transfer to Provident was on or about November 2015.

28. As part of the document package of Defendant Provident, Plaintiffs ultimately received Promissory Notes/beneficial units in the total amount of One Million Dollars ($1,000,000), payable within ten (10) years, with interest at 9% per annum. The Obligor under said Notes was Premier Group. It was explained to Plaintiffs that Premier Group invested the money and had a guaranteed return with reference to the Promissory Notes of 9% to Plaintiffs.

29. Plaintiffs were investors in IRAs for which Defendant Provident acted as legal custodian. In order to provide for enhanced security of retirement income in the United States, a

federal law imposes trustee status and minimum federal fiduciary standards of conduct on providers of certain retirement related services. See, e.g., ERISA, 29 U.S.C. Sections 1104, 1021-1031; Internal Revenue Code ("Code"), 26 U.S.C. 408; Treasury Regulation ("Treas. Reg.") 1.408-2, 26 C.F.R., promulgated pursuant to Code Sections 401 and 408.

30. Pursuant to federal law, Defendant Provident was obligated to comply with the following minimum standards and owed the following duties to preserve the property of each of the Plaintiffs:

(i) The fiduciary duty to acquire and hold particular investments specified by the IRA instrument. Treas. Reg. 1.408-2(e)(viii)(6)(i)(A);

(ii) The fiduciary duty to keep custody of investments and, except for investments pooled in a common investment fund in accordance with the provisions of the Treasury Regulations, to refrain from commingling the investments of each account with any other property. Treas. Reg. 1.408-2(e)(v)(A);

(iii) The fiduciary duty to deposit assets of account requiring safekeeping in an adequate vault. Treas. Reg. 1.408-2(e)(v)(B);

(iv) The fiduciary duty to determine the assets held by it and the value of such assets at least once in each calendar year and no more than 18 months after the preceding valuation. Treas. Reg. 1.408-2(e)(5)(ii)(E); and

(v) The fiduciary duty to receive, issue receipts for, and safely keep securities. Treas. Reg. 1.408-2(e)(4)(ii)(A).

31. In addition, pursuant to Treas. Reg. 1.408-2(e)(5)(ii)(E) and its guidance concerning valuation of assets, Defendant Provident also entered into a standardized form agreement with Plaintiffs under which Defendant Provident acknowledged its obligation as

custodian to timely report asset valuation to the IRS: "Each year (and when you take IRA distributions), we are required to report the fair market value ("FMV") of the assets within your IRA to the IRS."

32. Upon information and belief, Defendant Provident took few or no steps to ascertain the nature of the assets underlying or value of the Promissory Notes that they were directed to accept in return for the transfer of One Million Dollars ($1,000,000) each, despite their legal duty to determine the assets held by Premier Group and the value of such assets at least once each calendar year and no more than 18 months after the preceding valuation. Treas. Reg. 1.408-2(e)(5)(ii)(E). Defendant Provident made no effort to determine whether the borrowers on the Promissory Notes/unit interests were capable of paying for or paid interest on the so-called "loans" underlying the Promissory Notes.

33. Upon information and belief, the aforementioned Robert Guess, Richard Tilford, and Texas First Financial were not licensed or authorized to be security dealers, or financial advisors concerning the sale of securities, which included the aforementioned Promissory Notes as they are considered to be securities pursuant to law

34. As a result of the aforementioned parties being unlicensed, the transaction, as a matter of law, is considered as a prohibited transaction in that Guess and Tilford and Texas First Financial were "disqualified persons and/or entities."

35. Defendant Provident knew or should have known that the aforementioned parties were disqualified persons pursuant to law, and that it can only work with and accept fees from the Plaintiffs, and cannot enter into an agreement or business relationship with unqualified persons/entities such as Guest, Tilford, and Texas First Financial, or unregistered broker dealers or unregistered financial advisors.

36.     Upon information and belief, Defendant Provident was complicit with the execution of Promissory Notes/beneficial unit agreement to various entities which were unregistered, unreliable, illiquid, under-capitalized and totally inappropriate investments for IRA funds.

37.     Unbeknownst to Plaintiffs, upon information and belief, Defendant Provident had received other transfers from Texas First Financial and the representatives aforementioned, Robert Guess and Richard Tilford, for investment in securities (Notes) issued by Premier Group.

38.     Unbeknownst to Plaintiffs, at the time Plaintiffs made their investment, Texas First Financial, Premier Group, and various individuals who were connected with said entities, were under investigation by the Security & Exchange Commission ("SEC").

39.     Defendant Provident knew or should have known that the aforementioned parties were disqualified persons pursuant to law, and that it can only work with and accept fees from the Plaintiffs, and cannot enter into an agreement or business relationship with unqualified persons/entities such as Guest, Tilford, and Texas First Financial, or unregistered broker dealers or unregistered financial advisors.

40.     Upon information and belief, Defendant Provident was complicit with the execution of Promissory Notes/beneficial unit agreement to various entities which were unregistered, unreliable, illiquid, under-capitalized and totally inappropriate investments for IRA funds.

41.     Defendant Provident knew or should have known that said investments were inconsistent and inappropriate for IRA funds.

42.     Defendant Provident never gave any advice or warnings to Plaintiffs as to the inappropriateness of the investments, or the investigations and ultimate criminal actions that

were brought against the aforesaid individuals and entities

43. Ultimately, charges were filed against Robert Guess, Texas First Financial, Richard Tilford, and Premier Group, charging an elaborate Ponzi scheme in which the said individuals and entities convinced unsophisticated and unknowing persons with substantial IRA accounts to invest with Premier Group and those entities.

44. Defendant Provident was participatory in these transactions and, therefore, its culpable conduct creates a responsibility as fiduciary and trustee to the Plaintiffs for which the Plaintiffs are entitled to recover the funds misappropriated through misrepresentation, fraud and breach of fiduciary duty.

45. Although Plaintiffs' investment in Premier Group through Defendant Provident became worthless, Defendant Provident has made no attempts to recover any portion of the misappropriated funds or to assist Plaintiffs in any manner in an attempt to recover any such funds.

46. The notes have been in default since 2017 and it was not until Plaintiffs reviewed the paper work with their attorney in 2018 did they realize the fraud that had been practiced upon them.

47. Plaintiffs are investors in IRAs for which Defendant, Provident, acted as legal custodian. In order to provide for an enhance the security of retirement income in the United States, a federal law imposes trustee status and minimum federal fiduciary standards of conduct on providers of certain retirement related services. See, e.g., Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Sections 1104, 1021-1031; Internal Revenue Code ("Code"), 26 U.S.C. 408; Treasury Regulation ("Treas.

Reg.") 1.408-2, 26 C.F.R., promulgated pursuant to Code Sections 401 and 408. Among the minimum federal fiduciary standards of conduct are those for persons providing services for federally-created IRAs, which include trustees and directed custodians such as Defendant, Provident.

48. Pursuant to federal law and in order to ensure the security of the retirement income from such property, Plaintiffs entered into, as federal law requires, an IRA with Defendant, Provident, over the property transferred to this Defendant. In order to secure the retirement income from the IRA, federal law requires Defendant, Provident, to act as fiduciary in a fiduciary relationship with each Plaintiff. These duties are applicable to SDIRAs, a type of IRA account in which non-conventional investments are often held.

49. Defendant Provident was deliberately silent when it had a duty to speak and failed to disclose the material facts with the intention of inducing Plaintiffs to transfer One Million Dollars ($1,000,000).

50. Plaintiffs relied, to their detriment, on Defendant Provident's nondisclosure of material facts.

51. Reasonable grounds existed for Plaintiffs believing such representations to be true.

### AS AND FOR A FIRST CAUSE OF ACTION FOR FRAUD AND MISREPRESENTATION PLAINTIFF ALLEGES

52. Plaintiffs incorporate by reference the allegations set forth above as though fully set forth herein.

53. Plaintiffs allege further that Defendant Provident deliberately and

recklessly failed to disclose information knowing that the Plaintiffs' money was to be converted into Promissory Notes and the proceeds transferred to inappropriate entities and that Defendant Provident intentionally and recklessly misrepresented the investments and their return and their safety, resulting in the losses set forth in this Complaint.

54. The misrepresentations were made with disregard and recklessness as to their truth and Defendant Provident knowingly concealed these facts and failed to disclose those facts to the Plaintiffs, knowing that the Plaintiffs would rely on the statements and did rely on the statements and claims, all to their detriment.

55. The misrepresentations and or concealment was material to the transaction. Defendant Provident's misrepresentations were material and Defendant Provident knew that these facts would be relied upon by the Plaintiffs and would induce the Plaintiffs to transfer money from their IRA to the SDIRAs known as Provident.

56. Plaintiffs were justified in relying upon these misrepresentations as they did not appear unreasonable on their face and they had no reason to doubt their truth in view of the elaborate scheme orchestrated by Defendant Provident and at the request of Robert Guess and First Texas Financial.

57. Plaintiffs were damaged by loss of proceeds that was proximately caused by reliance on the misrepresentations and the concealment of the true facts by Defendant Provident.

58. As a direct and proximate result of Defendant Provident, the Plaintiffs lost One Million Dollars ($1,000,000), plus the right to interest and use of the funds.

59. Defendant Provident was deliberately silent when it had a duty to speak and failed to disclose the material facts with the intention of inducing Plaintiffs to transfer One Million Dollars ($1,000,000).

60. Plaintiffs relied, to their detriment, on Defendant Provident's nondisclosure of material facts.

61. Reasonable grounds existed for Plaintiffs believing such representations to be true.

## AS AND FOR A SECOND CAUSE OF ACTION
## FOR BREACH OF CONTRACT

62. Plaintiffs incorporate by reference, the allegations set forth above as though fully set forth herein.

63. Defendant Provident, as required by federal law, entered into an agreement to act as trustee of the Plaintiffs' funds under the rules and regulations as relate to establishment of IRA custodial accounts.

64. There is a substantial federal interest in the proper establishment and administration of IRA custodial accounts and in preserving and maintaining the security of individual retirement savings.

65. Federal law imposes the obligations on SDIRA trustees that have been previously alleged above. *See, e.g.,* C.F.R. SECTION 1.408-2(e). The custodian agrees to submit to the Internal Revenue Service (IRS) the reports prescribed by the IRS.

66. Defendant Provident's duties include the duty to determine exactly what properly forms the subject matter of the IRA and to use reasonable diligence to locate and safeguard IRA property.

67. Defendant Provident failed to perform contractual obligations by virtue of their conduct and omissions by failing to ascertain the nature of the Promissory Notes, failing to verify, secure and safeguard the purported underlying assets of same, failing to provide accurate

fair market value annual valuations, causing and/or knowingly permitting Plaintiffs to engage in prohibited transactions with disqualified persons and otherwise as further alleged herein.

68. As a direct, foreseeable and proximate result of Defendant Provident's breach, Plaintiffs suffered damages.

### AS AND FOR A THIRD CAUSE OF ACTION
### FOR BREACH OF FIDUCIARY DUTY

69. Plaintiffs incorporate by reference the allegations set forth above as though fully set forth herein.

70. Defendant Provident, as holder of the IRA accounts, owed Plaintiffs a fiduciary duty under federal regulations as well as the common law.

71. By reason of their fiduciary relationship, Defendant Provident owed Plaintiffs the duties of good faith, fair dealing, loyalty, due care and candor with respect to the fulfillment of Defendant Provident's duties under the IRA agreements and with respect to the proceeds received in the Promissory Notes issued.

72. Defendant Provident breached fiduciary duties to Plaintiffs by failing to ascertain the nature of the Promissory Notes and its beneficiary investment, failing to verify, secure and safeguard the purported underlying assets, failing to provide accurate fair market value annual valuations, causing and/or knowingly permitting Plaintiffs to engage in prohibited transactions with disqualified persons and otherwise as further alleged herein.

73. Defendant Provident is liable for actual and punitive damages in an amount to be determined at trial attributable to the conduct of Defendant Provident that was reckless, willful, wanton and without regard to the rights of Plaintiffs.

74. Defendant Provident failed to take any action to recover the funds transferred to

an inappropriate entity after default in the payment of the Promissory Note/unit agreement.

## AS AND FOR A FOURTH CAUSE OF ACTION
## FOR NEGLIGENCE AND GROSS NEGLIGENCE

75.   Plaintiffs incorporate by reference the allegations set forth above as though fully set forth herein.

76.   Defendant Provident failed to preserve, retain control over, hold and safe keep the assets of the Plaintiffs entrusted to the beneficiaries of the Promissory Notes.

77.   Defendant Provident's foregoing conduct constitutes ordinary/gross negligence.

78.   As a direct, proximate and foreseeable result of Defendant Provident's ordinary/gross negligence under the common law, Plaintiffs suffered damages.

## AS AND FOR A FIFTH CAUSE OF ACTION
## FOR PUNITIVE DAMAGES

79.   Plaintiffs incorporate by reference the allegations set forth above as though fully set forth herein.

80.   The acts of Defendant Provident as described above, constitute actual fraud in that Defendant Provident made false, material representations that Defendant Provident either knew to be false or asserted recklessly without knowledge of its truth, with the intent that Plaintiffs act on the misrepresentations.

81.   Plaintiffs did, indeed, act and rely on Defendant Provident's misrepresentations and have been injured as a result.

82.   The actions of Defendant Provident define outrageous misconduct in inappropriately investing the Plaintiffs' IRA proceeds in violation of its duties pursuant to federal law and comments as aforementioned. In order to prohibit the type of action practiced by Defendant Provident upon the Plaintiffs, who knowingly participated in scams upon the unwary

public, especially senior citizens, the Court should protect the interests of society by imposing additional damages on Defendant Provident.

83. The conduct described in the Complaint can only be seen as outrageous and criminal in nature and the Plaintiffs should be entitled to punitive damages.

84. Defendant, Provident, ignored the red flag that the sales agents were **not** registered as a representative with FINRA member firms, and, therefore, was **not** licensed to sell securities.

85. Promissory notes are presumptively defined as securities and, furthermore, the promissory notes clearly meet the definition of securities set forth by the U.S. Supreme Court in *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946) (defining an investment contract as (1) "an investment of money, (2) in a common enterprise, and (3) with the expectation of profits produced solely by the efforts of others").

86. Defendant, Provident, upon information and belief, had actual knowledge that Robert Guess / Texas First Financial Premier Immediate Care LLC and/or aka Premier One Emergency enter LLC aka Family ER, and John Goodman and Scott Pickard were **not** registered and, therefore, should have been aware of the unlawful sale of unregistered securities by unlicensed persons.

### PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs, Anthony J. Palumbo and Phyllis Palumbo, pray for judgment as follows:

A. Awarding compensatory damages against Defendant Provident, including

disgorgement of all unjust enrichments;

    B.    Awarding prejudgment interest;

    C.    Awarding punitive damages as appropriate;

    D.    Awarding extraordinary, equitable and/or injunctive relief as permitted by law (including, but not limited to, disgorgement);

    E.    Awarding Plaintiffs the costs and expenses of this litigation, including reasonable attorney's fees and expert's fees and other costs and disbursements; and

    F.    Granting Plaintiffs such other and further relief as to the Court may seem just and proper.

## JURY DEMAND

Plaintiffs, Anthony J. Palumbo and Phyllis Palumbo, demand a trial by jury on all cause of action so triable.

Dated: February 20, 2019

STUART E. FINER, ESQ.
Law Offices of Stuart E. Finer
Attorney for Plaintiffs
2615 Genesee Street
Utica, New York 13501
Telephone: 315-724-7800
Email: stuart@stuartfineresq.com

{00595399-1}