UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ANTHONY J. PALUMBO, *et al.*,

                Plaintiffs,

-against-                                       6:19-CV-0252 (LEK/ATB)

PROVIDENT TRUST GROUP LLC,

                Defendant.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiffs Anthony and Phyllis Palumbo bring this action against Defendant Provident Trust Group LLC, asserting the following claims: (1) fraud and misrepresentation; (2) breach of contract; (3) breach of fiduciary duty; and (4) negligence and gross negligence. See Dkt. No. 1 ("Complaint") at 10–14.

Now before the Court is Defendant's motion for summary judgment, which seeks dismissal of the Complaint in its entirety. See Dkt. No. 23-1 ("Motion"); Dkt. No. 23-2 ("Defendant's Statement of Material Facts" or "Defendant's SMF"). Plaintiffs oppose the Motion. See Dkt. No. 26 ("Anthony Palumbo Affidavit"); 27 ("Opposition"); 28 ("Plaintiffs' Statement of Material Facts" or "Plaintiffs' SMF")[1]. Defendant filed a reply. See Dkt. No. 29

---

[1] Plaintiffs' Statement of Material Facts fails to comply with this District's Local Rules of Practice in that it does not "mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs." N.D.N.Y. L.R. 56.1(b).
    Defendant argues that, as a consequence, the "Court *shall* deem admitted any properly supported facts set forth in [Defendant's] Statement of Material Facts that [Plaintiff] does not specifically controvert." Reply at 5 (quoting former Local Rule of Practice 7.1(a)(3)) (emphasis added). Though the rule was changed effective January 1, 2021 to state only that the "Court *may* deem admitted" any such facts, see Local Rule of Practice 56.1(b), the Court applies the old, mandatory version of the rule, which was in place when the Motion was briefed. See, e.g., Team

("Reply"); 29-1 ("Defendant's Response to Plaintiffs' Statement of Material Facts" or "Defendant's Response to Plaintiffs' SMF").

For the reasons discussed below, the Court grants Defendant's motion in its entirety.

## II. BACKGROUND

### A. Factual History

The following facts are undisputed, except where otherwise noted.

#### 1. The Parties

Plaintiffs are a married couple residing in New York. See Compl. ¶ 5. Mr. Palumbo is a retired ophthalmologist. See id. ¶ 8; Def.'s SMF ¶ 6. He is the sole holder of the individual retirement account ("IRA") at the center of this dispute. See Application at 3. Mrs. Palumbo is the primary beneficiary of the account. See id.; see also Def.'s SMF ¶ 50.

Defendant is "a Nevada-chartered trust company that provides custodial and related administrative services" to owners of self-directed IRAs. Def.'s SMF ¶ 1.

#### 2. The Investment

---

One Display Servs. v. Arlon Graphics, LLC, No. 15-CV-1185, 2016 U.S. Dist. LEXIS 81887, at *1 n.1 (D. Nev. June 23, 2016) (noting that the "present motion will be considered under the framework of the local rules in place at the time of its filing"); Montoya v. HRW of Las Cruces, Inc. (In re Wiley), 438 B.R. 331 (Bankr. D.N.M. 2010) (applying "the version of the local rule in place when the Motion was filed"); see also Local Rule of Practice 1.1(b) ("These Rules became effective on **January 1, 2021.**") (emphasis in original).

"Courts in this District have 'often enforced [former] Local Rule 7.1(a)(3) by deeming facts set in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.'" Brisbois v. United States, No. 15-CV-354, 2017 U.S. Dist. LEXIS 197779, at *3 (N.D.N.Y. Dec. 1, 2017) (Kahn, J.) (quoting Conway v. United States Postal Serv., No. 14-CV-180, 2016 U.S. Dist. LEXIS 42028, at *14 (N.D.N.Y. Mar. 30, 2016)).

Accordingly, where Plaintiff fails to respond to a fact contained in Defendant's Statement of Material Facts, the Court will deem that fact admitted, insofar as it is supported by evidence in the record.

In 2011, Mr. Palumbo met George Inserra, an investment broker. See Def.'s SMF ¶ 8; Dkt. No. 23-5 ("Anthony Palumbo Deposition")[2] at 35–36. In 2014 or 2015, Mr. Palumbo learned Inserra had been convicted of felonies involving stock fraud. See Def.'s SMF ¶ 10; Anthony Palumbo Dep. at 41. During the summer of 2014, Inserra introduced Mr. Palumbo to two men—Robert Guess and Richard Tilford—who owned and operated a real estate investment company called Texas First Financial. See Def.'s SMF ¶ 12; Anthony Palumbo Dep. at 42–44.

On October 29, 2015, Mr. Palumbo and Inserra flew to Dallas, Texas to meet with Guess, Tilford, and an engineer named Philip Carter. See Def.'s SMF ¶ 16; Anthony Palumbo Dep. at 48–50, 52. During the trip, Mr. Palumbo and Inserra visited an urgent care facility in which Mr. Palumbo was considering investing through a company called Premier Group. See Def.'s SMF ¶ 17–19; Anthony Palumbo Dep. at 47, 52–54.

Upon returning from Texas, Mr. Palumbo received a package of documents from Texas First Financial that he was to fill out in order to open an IRA with Defendant. See Def.'s SMF ¶ 24; Anthony Palumbo Dep. at 66. The package included an application for an IRA. See Dkt. No. 23-7 ("Application"); Def.'s SMF ¶ 25. The Application was blank when Mr. Palumbo received it. See id.; see also Anthony Palumbo Dep. at 64. Tilford, the First Financial principal, instructed Mr. Palumbo to sign the Application. See Def.'s SMF ¶ 26; Anthony Palumbo Dep. at 64. Though a signature appears on the Application, Mr. Palumbo disputes that he signed it, going as far as providing a handwriting sample. See Application at 4; Pls.' SMF ¶ 5; see

---

[2] Where the Court cites to deposition testimony, it cites to the deposition pagination, not the page numbers generated by CM/ECF, the Court's electronic filing system.

also Anthony Palumbo Aff. ¶ 2 ("I have no recollection of signing such documents and only can admit that some documents were sent to me in blank that were produced by the Defendant."), 5 ("Defendant relies on disclaimers above my signature, which I assert appears to me upon further review . . . a forged signature . . . . I don't believe I signed any extensive documents like this, and whatever I may have signed was not the documents that the Defendant now presents to the Court[.]"); Dkt. No. 26-2 (authorization form between Mr. Palumbo and Plaintiffs' counsel, signed by Mr. Palumbo).³ By signing the Application, Mr. Palumbo acknowledged having received Defendant's custodial agreement, see Application at 4; but Plaintiffs dispute actually receiving the custodial agreement, see Pls.' SMF ¶ 5 ("There is no proof that the Plaintiff received any document that is described as a 'custodial agreement' upon which the Defendant relies.").⁴

---

³ Defendant points out that Mr. Palumbo's forgery allegations conflict with his deposition testimony. See Def.'s Resp. to Pls.' SMF ¶ 5. According to the deposition transcript, when asked whether he was mailed the Application and chose to sign it, Mr. Palumbo replied, "Pretty much, yes." Anthony Palumbo Dep. at 64; see also id. at 68 ("This is my signature."), 71 ("The signature is mine, yes.").

Defendant argues these "efforts to escape these sworn admissions through a contrary affidavit are impermissible." Def.'s Resp. to Pls.' SMF ¶ 5; see also Reply at 2 (". . . Plaintiff seeks to escape the record evidence through a 'sham affidavit' recanting his sworn deposition testimony."). As this Court recently noted, courts generally should not "partake in weighing one form of evidence against another at the summary judgment stage." Kurec v. CSX Transp., Inc., No. 18-CV-670, 2020 U.S. Dist. LEXIS 205929, at *5 n.2 (N.D.N.Y. Nov. 4, 2020) (Kahn, J.) (citing 11 MOORE'S FEDERAL PRACTICE – CIVIL § 56.94(5)(d)). "However, a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." Hayes v. New York City Dep't of Corrections, 84 F.3d 614, 619 (2d Cir. 1996). Accordingly, the Court credits Mr. Palumbo's deposition testimony that he signed the Application.

⁴ Even if Plaintiffs never actually received the custodial agreement, they are still bound by its terms because Mr. Palumbo acknowledged receipt of it. See Bank Leumi USA v. Ehrlich, 98 F. Supp. 3d 637, 650 (S.D.N.Y. March 23, 2015) (noting that defendants' "bald declaration that they never received" a document "is belied by the fact that they signed an application

In addition to the Application, Mr. Palumbo received a form of Defendant's labeled "Direction of Investment." See Dkt. No. 23-9 ("Form"); see also Def.'s SMF ¶ 39; Anthony Palumbo Dep. at 82. Plaintiff signed the Form but does not remember filling out the Form's other fields, which are not in his handwriting. See Def.'s SMF ¶ 40; Anthony Palumbo Dep. at 78, 80–82. One field of the Form directed Defendant to wire $1 million to an account at Chase Bank belonging to "Premier Immediate Care." See Form at 2. In exchange, Mr. Palumbo received a promissory note. See id.

Above the signature field, under a heading that reads "Important: Please read before signing," the Form states:

> My account is self-directed and I, alone, am responsible for the selection, due [diligence], management, review, and retention of all Investments in my account. I agree that the Custodian and Administrator are not a "fiduciary" for my account, as the term is defined in the Internal Revenue Code, ERISA or any other applicable federal, state or local laws. I hereby direct the Custodian and Administrator, in their passive capacities, to enact this transaction for my account. I acknowledge and confirm that I have received, read and understand each of the disclosures for my account(s) and direction(s) of investment, and consent and agree to the terms and condition contained therein.

Form at 3.[5] Plaintiff "[p]robably" did not read the disclaimer before signing the Form. See

---

*expressly* acknowledging receipt of those terms") (emphasis in original).

[5] Mr. Palumbo sweepingly asserts that "[a]ll of the releases and indemnifications Defendant relies upon are the documents they claim were properly executed, and it is my position that they were not properly executed and none of the paragraph[s] upon which the Defendant now relies were ever brought to my attention, were ever discussed with me, nor did I execute any particular pages or paragraphs that contained those indemnifications or releases." Anthony Palumbo Aff. ¶ 2. Again, the Court notes that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." Hayes, 84 F.3d at 619; see also supra n.3. The Court will credit Mr. Palumbo's deposition testimony that he executed the Form.

Anthony Palumbo Dep. at 83.

The investment "resulted in [Mr. Palumbo's] loss of one million dollars." Anthony Palumbo Aff. ¶ 7.

### B. Procedural History

Plaintiffs initiated this action by filing the Complaint on February 21, 2019. See Docket. On March 18, 2020, Defendant filed its Motion. See id.

## III.    LEGAL STANDARD[6]

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the non-moving party should summary judgment be granted.").

---

[6] Plaintiffs mischaracterize the applicable standard. See Opp'n at 4 ("Plaintiffs, in the opposition to the motion to dismiss, rely upon the fact that the Defendant must accept the allegations claimed in the complaint to be true and accurate and the Court must read them in a most favorable light in support of Plaintiffs' opposition to the motion to dismiss."). Defendant has moved for summary judgment, not to dismiss under Federal Rule of Civil Procedure 12(b). "[I]t is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading." Samir Muhammad Al-Salihi v. Gander Mt., Inc., No. 11-CV-384, 2013 U.S. Dist. LEXIS 134685, at *34 (N.D.N.Y. Sept. 20, 2013) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Similarly, the movant is entitled to summary judgment when the nonmoving party has failed "to establish the existence of an element essential to [the movant's] case, and on which [the movant] will bear the burden of proof at trial." Id. at 322.

In attempting to repel a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Hence, "a court's duty in reviewing a motion for summary judgment is 'carefully limited' to finding genuine disputes of fact, 'not to deciding them.'" Macera v. Vill. Bd. of Ilion, No. 16-CV-668, 2019 U.S. Dist. LEXIS 169632, at *26 (N.D.N.Y. Sept. 30, 2019) (Kahn, J.) (quoting Gallo v. Prudential Residential Servs., Ltd.. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)).

### IV.   DISCUSSION

#### A. Fraud and Misrepresentation

*1. Applicable Law*

a. Whether the Choice-of-Law Provision Applies

Defendant argues that Nevada law governs but that "even if New York law applied to [Plaintiffs'] claims, the analysis and result would be no different." Mot. at 12 n.3. The custodial

agreement states that it "shall be governed by and construed under the applicable laws of the State of Nevada." See Dkt. No. 23-8 (the "Custodial Agreement") at 10. As discussed, Defendant has not established that Mr. Palumbo actually received the Custodial Agreement, though he acknowledged receipt and appears[7] to have agreed to be bound by its terms. See Application at 4.

The Court finds the contractual provision inapplicable to this tort claim. See Cotiviti, Inc. v. Deagle, No. 20-CV-2730, 2020 U.S. Dist. LEXIS 217035, at *15–16 (S.D.N.Y. Nov. 19, 2020) ("Even if such a clause is enforced, however, the contractual choice-of-law clause does not reach tort claims."). "In limited cases, New York courts construe a choice-of-law provision to encompass non-contractual claims if the provision is 'sufficiently broad so as to encompass the entire relationship between the contracting parties.'" Id. at *16 n.5 (quoting Innovative BioDefense, Inc. v. VSP Techs., Inc., No. 12-CV-3710, 2013 U.S. Dist. LEXIS 95429, at *16 (S.D.N.Y. July 3, 2013)). But "[l]anguage that the agreement itself is to be construed or governed by a particular law is too narrow to support such an interpretation." Cotiviti, Inc., 2020 U.S. Dist. LEXIS 217035, at *16 n.5. Therefore, the Custodial Agreement's choice-of-law clause does not encompass non-contractual claims such as this.

### b. Conflict-of-Law Analysis

"When a choice-of-law clause is disregarded, courts engage in traditional conflict-of-law analysis , the first step of which is to determine 'whether there is an actual conflict of laws

---

[7] The Application states: "I understand that the terms and conditions which apply to this IRA are contained in this Application and the Plan Agreement." Application at 4. Earlier in the same paragraph, the Application refers to "the IRA Custodial Account Agreement." Id. The Court assumes that the Application uses "Plan Agreement" and "IRA Custodial Account Agreement" interchangeably.

on the issues presented.'" Cotiviti, Inc., 2020 U.S. Dist. LEXIS 217035, at *16 (quoting Fed. Ins. Co. v. Am. Home Assurance Co., 639 F.3d 557, 566 (2d Cir. 2011)). "An actual conflict of law exists if 'the applicable law from each jurisdiction provides different substantive rules,' and the differences 'have a significant *possible* effect on the outcome of the trial." Holborn Corp. v. Sawgrass Mut. Ins. Co., 304 F. Supp. 3d 392, 398 (S.D.N.Y. 2018) (quoting Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc., 414 F.3d 325, 331 (2d Cir. 2005)).

Because "the elements of common law fraud are substantially the same under New York and Nevada law," there is no conflict, and the Court will apply New York law. See Prime Mover Capital Partners L.P. v. Elixir Gaming Techs., Inc., 793 F. Supp. 2d 651, 671 (S.D.N.Y. 2011).

    *2. Merits*

A fraud claim under New York law "requires that a plaintiff allege: (1) a misrepresentation or a material omission of fact which was false and known to be false by defendant, (2) made for the purpose of inducing the other party to rely upon it, (3) justifiable reliance of the other party on the misrepresentation or material omission, and (4) injury." Id. at 672. Defendant argues that the record shows neither any misrepresentation made by it nor reliance by Plaintiffs. See Mot. at 13. The essence of Plaintiffs' claim is that Defendant indicated Mr. Palumbo's account was to be a traditional IRA, rather than the self-directed IRA[8]

---

[8] According to the Securities and Exchange Commission ("SEC"):

> A *self-directed* IRA is an IRA held by a custodian that allows investment in a broader set of assets than is permitted by most IRA custodians. Custodians for self-directed IRAs disclaim most duties to investors, and may allow investors to invest retirement funds in "alternative assets" such as real estate, promissory notes, tax lien

it turned out to be. See Opp'n at 12–13.

The Court pauses to review Defendant's role in Mr. Palumbo's investment. Texas First Financial sent Mr. Palumbo documents, which bore Defendant's name, to create an IRA with Defendant. See Def.'s SMF ¶ 24; Anthony Palumbo Dep. at 66. One of those documents was the Form, which authorized Defendant to wire $1 million to "Premier Immediate Care" and which bore Mr. Palumbo's signature. See Form at 2–3; see also Def.'s SMF ¶ 39–40.

Mr. Palumbo remembered only one direct conversation with representatives of Defendant, dealing with the account's required minimum distribution and custodial fees. See Def.'s SMF ¶ 45; see also Anthony Palumbo Dep. at 92–93. Plaintiffs do not appear to allege any oral misrepresentations by Defendant. See Opp'n at 12 ("All of the *paperwork* that Plaintiff received indicated that the investment type was that of a traditional IRA, and at no point stated with any clarity that this was, in fact, a 'Self-Directed IRA.'") (emphasis added). Thus, the Court searches Defendant's documents for misrepresentations or material omissions.

Defendant relies heavily on the disclaimers found in the Custodial Agreement. See Def.'s SMF ¶¶ 30–38. Though, as discussed, it is unclear whether Mr. Palumbo actually received that document, see supra n.4, there is no genuine dispute that he received and signed the Form, see Anthony Palumbo Dep. at 82. And the Form states, below a heading reading

---

certificates, and private placement securities. *Investments in these kinds of assets may have unique risks that investors should consider. Those risks can include a lack of disclosure and liquidity – as well as the risk of fraud.*

See SEC Office of Investor Education and Advocacy, Investor Alert: Self-Directed IRAs and the Risk of Fraud, https://www.sec.gov/investor/alerts/sdira.html (emphases in original) (last visited March 19, 2021).

10

"Important: Please read before signing" and above the signature line, that the "account is self-directed" and that Defendant acts in a "passive capacit[y.]" Form at 3. That document, then, contains no misrepresentation.

The Application, on the other hand, does not state that the account was to be self-directed. See generally Application. That document indicated that Mr. Palumbo was opening a traditional IRA, a fact heavily relied upon by Plaintiffs. See Application at 1; see also Opp'n at 12 ("Defendant at all times held itself out as a 'traditional IRA'."); Anthony Palumbo Aff. ¶¶ 4 ("Without the alleged legitimacy of a traditional IRA, my monies would never have been transferred to the Defendant. I was led to believe by . . . the documents from the Defendant that my pension would continue in a traditional IRA with the same traditional rules, regulations, and safe guards."), 8. But the "traditional" label says nothing about who makes the investment decisions; traditional IRAs can apparently be self-directed, as here. See Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc., 464 F. Supp. 3d 634, 638 (S.D.N.Y. 2020) (noting that plaintiff opened three accounts, including a traditional IRA, all of which were self-directed); Paschall v. Comm'r, 137 T.C. 8, 13 (2011) (noting that petitioner "opened a Self Directed Traditional IRA").

A fraud claim under New York law can be founded on an omission. See Prime Mover Capital Partners L.P., 793 F. Supp. 2d at 672. And the Application does not specify that Mr. Palumbo's account was to be self-directed. See generally Application. Even assuming this constitutes a material omission, Plaintiffs' fraud claim fails because they cannot demonstrate reliance. Mr. Palumbo signed the Form despite its warning; nothing suggests adding a similar warning to the Application would have dissuaded him from signing that document.

11

Because there is no genuine dispute of material fact, and Defendant has established it is entitled to judgment as a matter of law, the Court grants Defendant summary judgment on Plaintiffs' fraud claim.

**B. Breach of Contract**

Plaintiffs asserted a breach of contract claim in the Complaint. See Compl. at 12–13. Defendant moved for summary judgment on this claim. See Mot. at 15–18. Plaintiffs failed to oppose summary judgment on the contract claim. See generally Opp'n. The Court must nevertheless examine whether Defendant is entitled to summary judgment. See Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 242 (2d Cir. 2004) ("Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law.").

*1. Applicable Law*

"We begin with the basic premises that courts will generally enforce choice-of-law clauses and that contracts should be interpreted so as to effectuate the parties' intent." Ministers & Missionaries Benefit Bd. v. Snow, 26 N.Y. 3d 466, 470 (2015). Though Plaintiffs argue they did not receive the Custodial Agreement, Mr. Palumbo acknowledged receipt in signing the Application. See Application at 4. Accordingly, the Court will apply the choice-of-law clause—and, therefore, Nevada law—to this claim. See supra n.4.

*2. Merits*

"A breach of contract claim requires a plaintiff to show: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damage because of the breach." Kerr v. Bank of Am., N.A., No. 15-CV-306, 2016 U.S. Dist. LEXIS 1071, at *8 (D. Nev. Jan. 5, 2016).

Plaintiffs argue Defendant "failed to perform contractual obligations by virtue of their conduct and omissions by failing to ascertain the nature of the Promissory Notes, failing to verify, secure and safeguard the purported underlying assets of same, failing to provide accurate fair market value annual valuations, [and] causing and/or knowingly permitting Plaintiffs to engage in prohibited transactions with disqualified persons and otherwise[.]" Compl. ¶ 67.

In Murray v. Provident Trust Grp., LLC, a federal district court examined a contract apparently identical to the Custodial Agreement and found that the IRA custodian had not breached it. No. 18-CV-1382, 2019 U.S. Dist. LEXIS 68403, at *15–16 (D. Nev. Apr. 23, 2019) (dismissing breach of contract claim against self-directed IRA custodian). Plaintiffs have not identified any particular provision of the Custodial Agreement breached by Defendant. See generally Compl.; Opp'n.

The claim appears to be based in part on certain duties imposed on IRA trustees by federal regulation. See Compl. ¶¶ 30, 65; see also Opp'n at 10–11 (citing 26 C.F.R. § 1.408-2). However, "under a plain reading of the Treasury regulations, sub-section (e) of 26 C.F.R. § 1.408-2 applies only to applicant trustees that are not banks." Lewis v. Del. Charter Guar. & Trust Co., No. 14-CV-1779, 2015 U.S. Dist. LEXIS 42521, at *27 (E.D.N.Y. March 31, 2015). Thus, Defendant "was not required to perform an independent fair market valuation pursuant to 26 C.F.R. 1.408-2(e)(5)(ii)(E) as Plaintiffs contend." Id. at 28.

In sum, there is no genuine dispute of material fact as to whether Defendant breached the Custodial Agreement or any other contract. Accordingly, the Court grants summary judgment to Defendant on this claim.

**C.  Breach of Fiduciary Duty**

On this claim, too, Plaintiffs fail to oppose summary judgment. See generally Opp'n. The Court will again analyze the claim. See Vermont Teddy Bear Co., 373 F.3d at 242.

### 1. Applicable Law

"In New York, claims for breach of fiduciary duty are analyzed 'under choice of law principles applicable to torts.'" Koury v. Xcellence, Inc., 649 F. Supp. 2d 127, 135 (S.D.N.Y. 2009). Again, "the first step . . . is to determine 'whether there is an actual conflict of laws on the issues presented.'" Cotiviti, Inc., 2020 U.S. Dist. LEXIS 217035, at *16 (quoting Fed. Ins. Co., 639 F.3d at 566). "There does not appear to be any conflict in the laws of New York and Nevada on the basic elements of pleading a breach of fiduciary duty claim." Leonard Global Macro Fund LLC v. North Am. Globex Fund, L.P., 2014 N.Y. Misc. LEXIS 4102, at *11 n.1 (Sup. Ct. 2014). The Court will therefore apply New York law to this claim. See, e.g., International Bus. Mach. Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir. 2004) ("In the absence of substantive difference . . . a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it.").

### 2. Merits

"To state a breach of fiduciary duty claim under New York law, a plaintiff must plead: '(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom.'" Spinelli v. NFL, 903 F.3d 185, 207 (2d Cir. 2018) (quoting Johnson v. Nextel Commc'ns, Inc., 660 F.3d 131, 138 (2d Cir. 2011)). Plaintiffs' claim fails on the first element.

The Custodial Agreement states that: "You acknowledge and agree that we are not your

fiduciary and have no fiduciary duties to you or with respect to your account and nothing in this Agreement shall be construed as conferring fiduciary status upon us." Custodial Agreement at 5. Despite Plaintiffs' protestations that they did not receive the Custodial Agreement, they are bound by it. See supra n.4.

Courts have held that "agreements like the [Custodial Agreement] do not create trust-type relationships when they specify that the financial services company owes no fiduciary duty." Murray, 2019 U.S. Dist. LEXIS 68403, at *15–16 (dismissing breach of fiduciary duty claim against self-directed IRA custodian). Others have "found that self-directed IRAs do not constitute trusts under state law and, accordingly, IRA trustees do not owe duties of care independent from the duties defined in their trust agreements." Lewis, 2015 U.S. Dist. LEXIS 42521, at *32 (dismissing breach of fiduciary duty claim against self-directed IRA custodian).

Because Defendant did not owe a fiduciary duty to Plaintiffs, it is entitled to summary judgment on Plaintiffs' claim that it breached such a duty.

**D. Negligence and Gross Negligence**

Plaintiffs also fail to oppose summary judgment on this claim. See generally Opp'n. Nevertheless, the Court will assess it. See Vermont Teddy Bear Co., 373 F.3d at 242.

*1. Applicable Law*

The Court again looks past the Custodial Agreement's choice-of-law provision in assessing what jurisdiction's law applies to this tort claim. See Cotiviti, Inc., 2020 U.S. Dist. LEXIS 217035, at *15–16. Because the elements of a negligence claim are the same under Nevada and New York law, the Court will apply the law of the forum state. Compare Sanchez v. Wal-Mart Stores, Inc., 125 Nev. 818, 824 (2009) ("It is well established that to prevail on a

15

negligence claim, a plaintiff must establish four elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages.") with Pasternack v. Lab. Corp. of Am. Holdings, 807 F.3d 14, 19 (2d Cir. 2015) ("The elements of a negligence claim under New York law are: '(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach.'") (quoting Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d 209, 215 (2d Cir. 2002)).

Both Nevada and New York recognize the economic loss doctrine, which, as discussed below, operates to bar Plaintiffs' claim. Compare Terracon Consultants Western, Inc. v. Mandalay Resort Group, 206 P.3d 81, 86 (Nev. 2009) (noting "the doctrine bars unintentional tort actions when the plaintiff seeks to recover 'purely economic losses'") with King County v. IKB Deutsche Industriebank AG, 863 F. Supp. 2d 288, 302 (2012) (noting that "[u]nder New York's 'economic loss' rule, a plaintiff cannot recover in tort for purely economic losses caused by a defendant's negligence").

    *2. Merits*

Plaintiffs' claim is barred by the economic loss doctrine because it "fall[s] beyond the scope of the duty owed them by" Defendant. 532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc., 96 N.Y. 2d 280, 292 (N.Y. 2001). The doctrine "reflects a policy interest in protecting defendants from disproportionate, and potentially limitless, liability." Travelers Cas. & Sur. Co. v. Dormitory Auth., 734 F. Supp. 2d 368, 379 (S.D.N.Y. 2010).

Plaintiffs have "only alleged economic losses." Murray, 2019 U.S. Dist. LEXIS 68403, at *18 (dismissing negligence claim against self-directed IRA custodian due to economic loss doctrine). And "the purpose of the doctrine is served by its application here, shielding

Defendant from unlimited liability in the professional and commercial setting in which it interacted with Plaintiffs." Id.

Accordingly, Plaintiffs' negligence and gross negligence claims are barred by the economic loss doctrine.

### E. Punitive Damages

Because the Court dismisses Plaintiffs' claims, it also dismisses Plaintiffs' request for punitive damages. See Better Env't, Inc. v. ITT Hartford Ins. Group, 96 F. Supp. 2d 162, 171 (N.D.N.Y. 2000).

### V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's motion for summary judgment (Dkt. No. 23-1) is **GRANTED in its entirety**; and it is further

**ORDERED**, that the Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED,** that the Clerk is directed to close this action; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   March 23, 2021
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge